FILED

APR 1 9 2000

CLERK
ALA COURT CRIMINAL APPEALS

NO. CR-99-0915

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327)

BRIEF AND ARGUMENT

OF

BILL PRYOR
ATTORNEY GENERAL

AND

JOSEPH G. L. MARSTON, III
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

EXHIBIT

B

TABLE OF CONTENTS

PAGE(S)

TABLE OF CASES........................................................................ ii

TABLE OF STATUTES................................................................. iv

STATEMENT OF THE CASE........................................................ 1

STATEMENT OF ISSUES PRESENTED......................................... 5

STATEMENT OF THE FACTS...................................................... 6

ARGUMENT.............................................................................. 12

    I. IN RE: LESSER INCLUDED OFFENSES......................... 12

    II. IN RE: THE SUFFICIENCY OF THE EVIDENCE............. 14

CONCLUSION........................................................................... 15

APPENDIX................................................................................ 16

CERTIFICATE OF SERVICE........................................................ 22

TABLE OF CASES

Page(s)

Bang V. State,
        620 So.2d. 106, (Ala.Crim.App, 1993) ............................. 13

Cook V. State,
        431 So. 2d 1322, (Ala, 1983). ........................................ 13

Culbreath V. State,
        667 So.2d. 156, (Ala.Crim.App, 1995) ............................ 14

Davis V. Alabama,
        498 U.S. 1127, 112 L.Ed.2d. 1196,
        111 S.Ct. 1091, (1991) .................................................... 13

Davis V. State,
        554 So.2d. 1094, (Ala.Crim.App, 1986) ........................... 13

Ex parte Davis,
        554 So.2d. 1111, (Ala, 1986) .......................................... 13

Ex parte Hunt,
        659 So.2d. 960, (Ala, 1995) .............................................. 4

Ex parte Ivey,
        698 So.2d. 187, (Ala, 1997) ............................................ 14

Ex parte Tomlin,
        443 So.2d. 59, (Ala, 1983) .............................................. 13

Ex parte Wright,
        494 So.2d. 745, (Ala, 1986) ............................................ 13

Faretta V. California,
        422 U.S. 806, 45 L.Ed.2d. 562,
        95 S.Ct. 2525, (1975). .................................................... 3

Garland V. Washington,
    232 U.S. 642, 58 L.Ed 772,
    34 S. Ct. 456, (1914). ...................................................... 4

Hayes V. State,
    717 So.2d. 30, (Ala.Crim.App, 1997) ................................. 14

Hunt V. Alabama,
    516 U.S. 880,133 L.Ed.2d. 146,
    116 S.Ct. 215, (1995) ...................................................... 4

Hunt V. State,
    659 So.2d. 933, (Ala.Crim.App, 1994) ............................... 4

Ivey V. State,
    698 So.2d. 179, (Ala.Crim.App, 1996) ............................. 14

Lucus V. State,
    645 So. 2d. 333, (Ala.Crim.App, 1994) ............................. 4

McKaskle V. Wiggins,
    465 U.S. 168, 183, 79 L.Ed.2d. 122,
    136, 104 S.Ct. 944, (1984) ............................................. 4

Miranda V. Arizona,
    384 U.S. 436, 16 L. Ed 2d 694,
    86 S. Ct. 1602, (1966) .................................................... 11

Singleton V. Tuscaloosa,
    557 So.2d. 565, (Ala.Crim.App, 1990). ............................. 2

Tomlin V. Alabama,
    466 U.S. 954, 80 L.Ed.2d. 545,
    104 S.Ct. 2160, (1984) ................................................... 13

Watts V. State,
    460 So.2d. 204, (Ala, 1984) ............................................ 2

Wright V. Alabama,
    479 U.S. 1101, 94 L. Ed.2d. 183,
    107 S.Ct. 1331, (1987) ................................................... 13

Wright V. State,
    494 So.2d. 726, (Ala.Crim.App, 1985)............................. 13

## TABLE OF STATUTES

Page(s)

CODE OF ALABAMA, 1975

    TITLE 13A, Section 13A-1-9........................................ 13, 17

        Section 13A-5-6......................................... 17-18

        Section 13A-5-9.................................... 4, 18-19

        Section 13A-6-24.......................................... 19

        Section 13A-6-90............................. 1, 4, 12, 19

        Section 13A-6-92.......................................... 20

        Section 13A-11-8............................... 12, 20-21

NO. CR-99-0915

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327)

---

BRIEF AND ARGUMENT OF APPELLEE, THE STATE OF ALABAMA

---

## STATEMENT OF THE CASE

The Grand Jury of Montgomery County, at its February, 1999, term, indicted the appellant, John Willie Minnifield, also known by an array of aliases, including J.W. Minnifield, for stalking[1] Ms. Vonciel Minnifield. (C. pp. 10-11)

---

[1] Code Of Alabama, (1975), Section 13A-6-90(a), appendix.

J.W. Minnifield was arraigned on the indictment or waived arraignment[2] and pleaded not guilty.

Before trial, J.W. Minnifield attempted to proceed with "hybrid" representation, i.e. being represented by counsel and proceeding *pro se*, as co-counsel. Although represented by counsel, most of the pre-trial defense motions were filed by J.W. Minnifield, *pro se*. (C. pp. 18-19, 25-28, and 31-34) As a career criminal with some eleven prior felony convictions, (C. p. 16-17 and 38-108), J.W. Minnifield knew how to use gobbledygook to create confusion.

One of J.W. Minnifield's *pro se* motions was a motion to reduce bond, filed March 16, 1999. (C. pp. 18-19) After several hearings, the motion was granted on July 12, 1999, (C. pp. 1-4), conditioned, *inter alia*, on J.W. Minnifield's, "... having no contact with the victim, her family, or employer... ." (C. p. 4)

*The next day*, July 13, 1999, the district attorney filed a motion to revoke bond, advising the Court that, after being released on reduced bond the day before, J.W. Minnifield had gone to the home of a relative of the victim. Although the relative told

---

[2] See <u>Garland V. Washington</u>, 232 U.S. 642, 58 L.Ed 772, 34 S. Ct. 456, (1914); <u>Watts V. State</u>, 460 So. 2d 204, (Ala, 1984), and <u>Singleton V. Tuscaloosa</u>, 557 So. 2d 565, 566-567, (Ala.Crim.App, 1990).

2

J.W. Minnifield that he did not wish to speak to him, J.W.
Minnifield forced his way into the house and followed the man into
his bedroom, castigating him and making implied threats against
the victim. (C. pp. 29-30)

On October 21, 1999, the district attorney's motion came on
for hearing, and a capias was issued. (C. p. 5)

On November 6, 1999, the capias was executed. On
November 12, 1999, the original bond was re-instated. (C. pp. 5)

On January 10, 2000, the cause came on for trial before the
Honorable Sally M. Greenhaw, a Circuit Judge and a jury. J.W.
Minnifield was attended by his attorney, Mr. John Wiley Hartley,
Esq. The State was represented by its district attorney, Ms.
Eleanor I. Brooks, Esq. and her deputy, Mr. Daryl Bailey, Esq. (R-
1-2)

Before trial, the question of "hybrid" representation was
taken up. Judge Greenhaw made it clear that, although she had
appointed Mr. Hartley to represent J.W. Minnifield, she recognized
J.W. Minnifield's right to represent himself[3]. However, she declined

---

3 Faretta V. California, 422 U.S. 806, 45 L.Ed.2d. 562, 95 S.Ct.2525, (1975).

3

to allow J.W. Minnifield "hybrid" representation[4]. After an extensive

colloquy, J.W. Minnifield insisted on his right to represent himself.

Judge Greenhaw ordered Mr. Hartley to remain in the courtroom,

in case J.W. Minnifield changed his mind. (R-42-44, 47-57 and 59)

On January 12, 2000, the jury, having heard the evidence,

argument of counsel and charge of the Court, found J.W.

Minnifield guilty of stalking, as charged in the indictment, and he

was adjudged guilty in accordance with the verdict.  (C. pp. 6 and

37, and R- 354-355)

On February 7, 2000, the cause came on for sentencing. Mr.

Hartley was present, although his status was less than clear. J.W.

Minnifield, having suffered eleven prior felony convictions, was

sentenced to twenty years imprisonment[5]. (C. p. 7 and R-357-369)

---

[4] A criminal defendant has no right to "hybrid" representation. McKaskle V.
Wiggins, 465 U.S. 168, 183, 79 L.Ed.2d. 122, 136, 104 S.Ct. 944, (1984); Hunt
V. State, 659 So.2d. 933, 938, (Ala.Crim.App, 1994]; aff'd *sub nom* Ex parte
Hunt 659 So.2d. 960, [Ala, 1995]; cert. den. __ U.S. __, 133 L.Ed.2d. 146, 116
S.Ct. 215; Lucus V. State, 645 So. 2d. 333, (Ala.Crim.App, 1994); cert. den.

[5] Code Of Alabama, (1975), Sections 13A-5-9(c)(1) and 13A-6-90(b), appendix.

On February 11, 2000, J.W. Minnifield, *pro se*, filed a motion for a new trial; the same was denied on March 16, 2000. (C. pp. 8-9 and 111-115)

This appeal follows. (R-369)

## STATEMENT OF ISSUES PRESENTED

1. Does a criminal defendant have the right to charges to the jury on lesser included offenses on the basis of an absurd theory, which is contrary to law?

2. Where the State proves that the defendant repeatedly followed the victim, threatened her life, tampered with her car, ran her off the road, broke into her home with a weapon, assaulted her, and tried to kill her, is the evidence sufficient to prove stalking, where the defendant and the victim were contemplating a divorce and the defendant's acts may have been intended as "communication"?

5

## STATEMENT OF THE FACTS

The appellee's statement of the facts is supplemental to and in correction of Appellant J.W. Minnifield's statement.

The State's evidence proved a course of stalking of Ms. Vonciel Minnifield by J.W. Minnifield during 1998, which included at least eleven separate instances of personal confrontation, in addition to threatening letters and notes. On at least three occasions he threatened to kill her and demonstrated his intent with violent acts. (R-120-121) Except for an act in Auburn, all of these incidents took place in Montgomery County, Alabama. (R-119-120)

Ms. Vonciel Minnifield met J.W. Minnifield in 1992, and they dated for two years before they married on October 8, 1994. About two years after they married, J.W. Minnifield undertook to shove Ms. Minnifield during an argument. She told him that she did not want him "putting hands on" her. (R-87-89 and 212-213)

In July of 1998, J.W. Minnifield's being in a state of intoxication led Ms. Minnifield to take her children and leave her husband. What happened was this: By 1998, Ms. Minnifield had learned that when J.W. Minnifield was drunk, an argument always

ensued. Not wanting to expose her children to drunken quarrels, Ms. Minnifield had developed the practice of taking her children and leaving the home, knowing that when they returned a few hours later, J.W. Minnifield would be passed out. However, on this occasion in July of 1998, Ms. Minnifield returned in heavy rain to find the locks on her home changed. She took her children to a motel, and never returned to the home she had shared with J.W. Minnifield. (R-89-90)

By October of 1998, Ms. Minnifield was living at an apartment with her children. J.W. Minnifield came to the apartment, but Ms. Minnifield refused to let him in or speak to him. Whereupon, J.W. Minnifield undertook to vandalize the lady's car. Ms. Minnifield called the police. As she was making her report, J.W. Minnifield returned and the police instructed him to leave his estranged wife alone. (R-90-92)

At 9:30 p.m. on October 29, 1998, J.W. Minnifield came to Ms. Minnifield's apartment demanding that she give him a vacuum cleaner he claimed was his. She told him that she would deliver it to his place of employment the next day, but she would not open her door to him. He left but returned around 11:00 p.m. Again Ms.

7

Minnifield refused to open her door, and he left. However, at 12:30

a.m, J.W. Minnifield returned in a rage, and apparently drunk.

J.W. Minnifield announced that, if Ms. Minnifield did not admit

him, he was going to smash through a window. Fearing flying

glass, Ms. Minnifield awakened her younger daughter, Ashley Eliza

Cook, who was sleeping in the room with the only window, and told

her to get up. J.W. Minnifield kicked in the front door and entered

the apartment in a murderous rage. Ms. Minnifield urged her

daughters to flee the apartment, but they insisted on trying to

protect their mother. J.W. Minnifield produced a hatchet.

Repeatedly, he stated his intent to kill Ms. Minnifield. During the

violent struggle, Ms. Minnifield was thrown through a window,

sustaining cuts and bruises. Ms. Minnifield's older daughter, Dana

Cook, suffered a cut requiring stitches from J.W. Minnifield's

hatchet. Finally, Ms. Minnifield and both of her daughters

managed to flee their home. The girls fled to the apartment of Ms.

Rosebud Brown, while J.W. Minnifield pursued his estranged wife

through the apartment complex. Ms. Brown called the police.

When Montgomery Police Officer G.L. Sisson and his partner

arrived, they arrested J.W. Minnifield.  (R-96-104, 138-143, 147-154, 198-203, and 208-212)

After he was released from jail the next day, J.W. Minnifield told Ms. Minnifield's sister, Clemmitha Petace, what he had done the previous night, admitting chasing his estranged wife with an "ax" and hitting Ms. Petace's niece. (R-70-73)

On November 14, 1998, Ms. Minnifield took Mr. Timothy Brown to Millbrook to pick up his son. J.W. Minnifield  observed Ms. Minnifield driving on the Northern Bypass in Montgomery on her way to Millbrook. He undertook to follow her onto I-65, trying to run her off the road and shouting death threats at her, when he drew alongside of her. Ms. Minnifield managed to escape only by breaking hard and spinning her car into the median. She went straight to the police and executed a warrant charging her estranged husband with reckless endangerment.  (R-92-96, 157, and 190-194)

On three or four occasions, J.W. Minnifield was waiting outside when Ms. Minnifield and her daughters left their martial arts class. He would follow them when they drove away. (R-104-106)

One of Ms. Minnifield's jobs was as a caterer at the RSA Plaza. Every year her employer catered a tailgate party at the last Auburn home game. J.W. Minnifield had never gone with his wife to one of these events, but in 1998, he followed her there. Terrified, Ms. Minnifield asked Lester Glaxton, a security guard employed by RSA Plaza, to protect her. When Ms. Minnifield noticed J.W. Minnifield watching her from only twenty yards away, she pointed him out to Mr. Glaxton. J.W. Minnifield was asked to leave, and after about thirty minutes he did so. (R-106-108, 181-186)

Twice, J.W. Minnifield stalked his estranged wife at her church, although he did not otherwise indicate any interest in religion. (R-109-110) He stalked her at her job at RSA Plaza, (R-110-112 and 224-228), and at her second job at Shoney's. (R-118-119)

He also sent her threatening letters through mail and left notes on her car. (R-112-118)

J.W. Minnifield also communicated death threats against Ms. Minnifield to her babysitter, Ms. Lawana Benson. (R-158-172)

He also threatened acquaintances of Ms. Minnifield, like auto parts store owner, Mr. Pete Rose, and spread vicious slander about her. (R-75-81)

J.W. Minnifield, *pro se*, called a number of witnesses, but it is not at all clear what he intended to prove by them. In fact, two of them, Mr. Ronnie Waters, (R-252), and Ms. Gloris Perdo, (R-255-258), gave evidence supporting the charges.

Minnifield testified in his own behalf and tried to justify his conduct. (R-261-288)

An agreed stipulation was made for Mr. Don Thomason, a defense witness, who was indisposed. (R-295-296)

In rebuttal, the State presented the testimony of former Montgomery Police Detective Cassandra Williams. Pursuant to the procedure mandated by <u>Miranda V. Arizona</u>, (384 U.S. 436, 16 L. Ed.2d. 694, 86 S.Ct. 1602 [1966]), Detective Williams obtained a voluntary incriminating statement from J.W. Minnifield relating to his violent attack on Ms. Minnifield and her daughters on October 29-30, 1998. In the statement, J.W. Minnifield also admitted tampering with his estranged wife's car. (R-296-306)

11

<u>ARGUMENT</u>

I.

IN RE: LESSER INCLUDED OFFENSES

It was undisputed in this case that J.W. Minnifield repeatedly followed Ms. Minnifield, threatened her life, tampered with her car, ran her off the road, broke into her home with a weapon, assaulted her, and tried to kill her. Yet, J.W. Minnifield claims that the Trial Judge erred in not charging the jury on harassment under Section 13A-11-8(a)(1), <u>Code Of Alabama</u>, (1975), appendix. Although, some of J.W. Minnifield's acts might, if considered alone, constitute harassment, most of them went way beyond harassment, and, because all of these acts together were part of a course of repeated conduct intended to terrorize  Ms. Minnifield, they together constituted stalking to the exclusion of any other offense. Section 13A-6-90(a), <u>Code Of Alabama</u>, (1975), appendix. J.W. Minnifield's "defense" was no defense at all. His claim that he should be excused, because he and Ms. Minnifield were contemplating a divorce and he was trying to communicate with her, is patent nonsense, although typical of the notions self-righteously pontificated by career criminals when they proceed *pro se*.

Where, as here, there is no basis for a verdict of guilty of a certain lesser included offense, an accused person has no right to

12

charges on such offense.  Section 13A-1-9(b), Code of Alabama, 1975, appendix; Bang V. State, 620 So.2d. 106, 110, (Ala.Crim.App, 1993); cert. den; Davis. V. State, 554 So.2d. 1094, 1103, (Ala.Crim.App, 1986); aff'd *sub nom* Ex parte Davis, 554 So.2d. 1111, (Ala, 1986); cert. den. 498 U.S. 1127, 112 L.Ed.2d. 1196, 111 S.Ct. 1091; Wright V. State, 494 So.2d. 726, 729ff, (Ala.Crim.App, 1985); aff'd. *sub nom* Ex parte Wright, 494 So.2d. 745, 747ff, (cases collected) (Ala, 1986); cert. den. 479 U.S. 1101, 94 L.Ed.2d. 183, 107 S.Ct. 1331; Ex parte Tomlin, 443 So.2d. 59, 61ff, (Ala, 1983); cert. den. 466 U.S. 954, 80 L.Ed.2d. 545, 104 S.Ct. 2160, and Cook V. State, 431 So.2d. 1322, (Ala, 1983).

The Trial Court correctly refused to charge on harassment.

13

II.

## IN RE: THE SUFFICIENCY OF THE EVIDENCE

J.W. Minnifield's "defense" was that he should be excused for terrorizing Ms. Minnifield by malicious and cruel acts of violence, because he and Ms. Minnifield were contemplating a divorce and he was trying to communicate with her. Giving such a "defense" the force of law would strip women, who found themselves in failing marriages, of any protection of the law from whatever cruelty their estranged husbands chose to visit on them. Such a notion would violate every principle of the rule of law, due process, and equal protection. Yet, this is the basis of J.W. Minnifield's claim that the evidence was insufficient. This claim should be rejected out of hand.

Stalking charges most commonly arise from failing or failed marriages or similar relationships. See Hayes V. State, 717 So.2d. 30, 32, (Ala.Crim.App, 1997); cert. den; Ivey V. State, 698 So.2d. 179, 181, (Ala.Crim.App, 1996), aff'd. *sub nom* Ex parte Ivey, 698 So.2d. 187, (Ala, 1997); Culbreath V. State, 667 So.2d. 156, 157, (Ala.Crim.App, 1995); cert. den.

The Trial Judge correctly submitted the case to the jury.

14

CONCLUSION

In conclusion, the appellee, the State of Alabama,

respectfully submits that there is no error in the record, and the

appellee prays that the judgment and sentence of the Honorable

Circuit Court of Montgomery County in this case be affirmed.

Respectfully submitted,

BILL PRYOR
PRY002
ATTORNEY GENERAL
BY:

JOSEPH G. L. MARSTON, III
Mar032
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR THE STATE OF
ALABAMA, APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

15

APPENDIX

# CODE OF ALABAMA, 1975

## TITLE 13A

### SECTION 13A-1-9. LESSER INCLUDED OFFENSES.

(a) A defendant may be convicted of an offense included in an offense charged.  An offense is an included one if:

(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offenses charged; or

(2) It consists of an attempt of an attempt or solicitation to commit the offense charged of to commit a lesser included offense; or

(3) It is specifically designated by statute as a lesser degree of the offense charged or;

(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest, or a lesser kind of culpability suffices to establish its commission.

(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.

### SECTION 13A-5-6. SENTENCES OF IMPRISONMENT FOR FELONIES.

(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:

(1) For a Class A felony, for life or not more than 99 years or less than 10 years.

(2) For a Class B felony, not more than 20 years or less than 2 years.

17

(3) For a Class C felony, not more than 10 years or less than 1 year and 1 day.

(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years.

(5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years.

(b) The actual time of release within the limitations established by subsection (a) of this section shall be determined under procedures established elsewhere by law.

## SECTION 13A-5-9. HABITUAL FELONY OFFENDERS - ADDITIONAL PENALTIES

(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished for a Class B felony:

(2) On conviction of a Class B felony, he must be punished for a Class A felony:

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

(b) In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished for a Class A felony;

18

(2) On conviction of a Class B felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not less than 99 years.

(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;

(2) On conviction of a Class B felony, he must be punished for life in the penitentiary;

(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole.

## SECTION 13A-6-24.  RECKLESS ENDANGERMENT.

(a) A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

(b) Reckless endangerment is a Class A misdemeanor.

## SECTION 13A-6-90.  STALKING.

(a) A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking.

(b) The crime of stalking is a Class C felony.

19

**SECTION 13A-6-92. DEFINITIONS.**

As used in this article, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise.

(a) COURSE OF CONDUCT.   A pattern of conduct composed of a series of acts over a period of time which evidences a continuity of purpose.

(b) CREDIBLE THREAT.   A threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear.

(c) HARASSES. Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose.  The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress.  Constitutionally protected conduct is not included within the definition of this term.

**SECTION 13A-11-8. HARASSMENT OR HARASSING COMMUNICATIONS.**

 (a)(1) HARASSMENT.-- A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat,

that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

(b)(1) HARASSING COMMUNICATIONS. -- A person commits the crime of harassing communications if, with intent to harass or alarm another person, he or she does any of the following:
a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of written or electronic communication, in a manner likely to harass or cause alarm.

b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication.

c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.
Nothing in this section shall apply to legitimate business telephone communications.

   (2) Harassing communications is a Class C misdemeanor.

<u>CERTIFICATE OF SERVICE</u>

I, Joseph G. L. Marston, III, Assistant Attorney General of

Alabama and one of the attorneys for the State of Alabama,

appellee in the above styled cause, do hereby certify that on this

the 19th day of April, 2000, I did a serve copies of the foregoing on

the attorney* for the appellant and his former attorney**, by

mailing the same to them, first class postage prepaid and

addressed as follows:

> Mr. Joseph E. Burkhart, Esq.*
> Attorney At Law
> Law Offices of Joseph E. Burkhart
> 472 South Lawrence Street
> Montgomery, Alabama, 36104
>
> Mr. John Wiley Hartley, Esq.**
> Attorney At Law
> 312 Scott Street
> Montgomery, Alabama, 36104

JOSEPH G. L. MARSTON, III
Mar032
ASSISTANT ATTORNEY GENERAL

22

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

(334) 242-7300

NUMBER 21545

23