

FILED

MAY — 9 2001

CLERK
ALA COURT CRIMINAL APPEALS

NO. CR-00-1167

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

A POST-CONVICTION PROCEEDING

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327.60)

BRIEF AND ARGUMENT

OF

BILL PRYOR, ATTORNEY GENERAL

AND

JOSEPH G. L. MARSTON, III, ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

Exhibit J

NO. CR-00-1167

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

A POST-CONVICTION PROCEEDING

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327.60)

BRIEF AND ARGUMENT

OF

BILL PRYOR, ATTORNEY GENERAL

AND

JOSEPH G. L. MARSTON, III, ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

# TABLE OF CONTENTS

PAGE(S)

TABLE OF CASES......................................................................... ii

TABLE OF STATUTES................................................................. iv

TABLE OF RULES OF COURT..................................................... iv

STATEMENT OF THE CASE.......................................................... 1

STATEMENT OF ISSUE PRESENTED........................................... 7

STATEMENT OF THE FACTS....................................................... 8

    I. ON THE TRIAL................................................................ 8

    II ON THE POST-CONVICTION PETITION......................... 14

ARGUMENT................................................................................ 14

    IN RE: SUMMARY DISPOSITION..................................... 14

CONCLUSION............................................................................. 18

APPENDICIES............................................................................ 19

    APPENDIX A, STATUTES................................................. 20

    APPENDIX B-MEMORANDUM OPINION IN
    JOHN WILLIE MINNIFIELD V. STATE,
    (CR-99-915, SEPT. 22, 2000); __ CASE,
    __ So.2d. __, (ALA.CRIM.APP, 2000)................................ 25

CERTIFICATE OF SERVICE........................................................ 29

## TABLE OF CASES

Page(s)

Aaron V. State,
    271 Ala. 70, 122 So.2d. 360, (1960)................................. 16

Andersch V. State,
    716 So.2d. 242, (Ala.Crim.App, 1997)............................. 17

Ex parte Hunt,
    659 So.2d. 960, (Ala, 1995) .............................................. 4

Ex parte Radford,
    557 So.2d. 1288, (Ala, 1990).......................................... 16

Faretta V. California,
    422 U.S. 806, 45 L.Ed.2d. 562,
    95 S.Ct. 2525, (1975). ..................................................... 4

Garland V. Washington,
    232 U.S. 642, 58 L.Ed. 772,
    34 S.Ct. 456, (1914). ....................................................... 2

Hunt V. Alabama,
    516 U.S. 884,133 L.Ed.2d. 146,
    116 S.Ct. 215, (1995) ...................................................... 4

Hunt V. State,
    659 So.2d. 933, (Ala.Crim.App, 1994) ............................... 4

John Willie Minnifield V. State,
    (CR-99-915, Sept. 22, 2000);
    __ case, __ So.2d. __, (Ala.Crim.App, 2000).......... 2, 6, 25-28

Lockett V. State,
    644 So.2d 34 (Ala, 1994)................................................. 17

Lucus V. State,
    645 So. 2d. 333, (Ala.Crim.App, 1994) ............................. 4

McKaskle V. Wiggins,
    465 U.S. 168, 183, 79 L.Ed.2d. 122,
    136, 104 S.Ct. 944, (1984) .............................................. 4

Miranda V. Arizona,
    384 U.S. 436, 16 L. Ed 2d 694,
    86 S. Ct. 1602, (1966) ................................................... 13

Singleton V. Tuscaloosa,
    557 So.2d. 565, (Ala.Crim.App, 1990). ............................. 2

United States V. Calandra,
    414 U.S. 338, 38 L.Ed.2d. 561,
    94 S.Ct. 613, (1974)...................................................... 16

United States V. Costello,
    350 U.S. 359, 100 L.Ed. 397,
    76 S.Ct. 406, (1956)...................................................... 16

Watts V. State,
    460 So.2d. 204, (Ala, 1984) ............................................. 2

## TABLE OF STATUTES

Page(s)

CODE OF ALABAMA, 1975

TITLE 13A, Section 13A-1-9............................................. 20

Section 13A-5-6......................................... 20-21

Section 13A-5-9.................................... 5, 21-22

Section 13A-6-24.......................................... 22

Section 13A-6-90......................................... 2, 5

Section 13A-6-92...................................... 22-23

Section 13A-11-8..................................... 23-24

## TABLE OF RULES OF COURT

PAGE(S)

ALABAMA RULES OF CRIMINAL PROCEDURE,

Rule 32.2...................................................................... 16

Rule 32.6................................................................. 16-17

Rule 32.7................................................................ 14, 17

stalking[1] Ms. Vonciel Minnifield. (D.A.[2] C. pp. 10-11)

J. W. Minnifield was arraigned on the indictment or waived arraignment[3] and pleaded not guilty.

Before trial, J. W. Minnifield attempted to proceed by "hybrid" representation, *i.e.* being represented by counsel and proceeding *pro se*, as co-counsel. Although represented by counsel, most of the pre-trial defense motions were filed by J. W. Minnifield, *pro se*. (D.A. C. pp. 18-19, 25-28, and 31-34) As a career criminal with some eleven prior felony convictions, (D.A. C. p. 16-17 and 38-108), J. W. Minnifield knew how to use gobbledygook to create confusion.

One of J. W. Minnifield's *pro se* motions was a motion to reduce bond, filed March 16, 1999. (D.A. C. pp. 18-19) After several hearings, the motion was granted on July 12, 1999, (D.A. C. pp. 1-4), conditioned, *inter alia*, on J. W. Minnifield's, "... having

---

[1] Code Of Alabama, (1975), Section 13A-6-90(a), Appendix "A".

[2] "D.A." refers to the record on appeal in Minnifield's direct appeal. See John Willie Minnifield V. State, (CR-99-915, Sept. 22, 2000); __ case, __ So.2d. __, (Ala.Crim.App, 2000); Appendix "B".

[3] See Garland V. Washington, 232 U.S. 642, 58 L.Ed. 772, 34 S.Ct. 456, (1914); Watts V. State, 460 So.2d. 204, (Ala, 1984), and Singleton V. Tuscaloosa, 557 So.2d. 565, 566-567, (Ala.Crim.App, 1990).

2

no contact with the victim, her family, or employer... ." (D.A. C. p. 4)

*The next day*, July 13, 1999, the district attorney filed a motion to revoke bond, advising the Court that, after being released on reduced bond the day before, J. W. Minnifield had gone to the home of a relative of the victim. Although the relative told J. W. Minnifield that he did not wish to speak to him, J. W. Minnifield forced his way into the house and followed the man into his bedroom, castigating him and making implied threats against the victim. (D.A. C. pp. 29-30)

On October 21, 1999, the district attorney's motion came on for hearing, and a capias was issued. (D.A. C. p. 5)

On November 6, 1999, the capias was executed. On November 12, 1999, the original bond was re-instated. (D.A. C. pp. 5)

On January 10, 2000, the cause came on for trial before the Honorable Sally M. Greenhaw, a Circuit Judge and a jury. J. W. Minnifield proceeded *pro se,* with his stand-by attorney, Mr. John Wiley Hartley, Esq. The State was represented by its district

3

attorney, Ms. Eleanor I. Brooks, Esq. and her deputy, Mr. Daryl
Bailey, Esq. (D.A. R-1-2)

Before trial, the question of "hybrid" representation was
taken up. Judge Greenhaw made it clear that, although she had
appointed Mr. Hartley to represent J. W. Minnifield, she recognized
J. W. Minnifield's right to represent himself[4]. However, she
declined to allow J. W. Minnifield "hybrid" representation[5]. After an
extensive colloquy, J. W. Minnifield insisted on his right to
represent himself. Judge Greenhaw ordered Mr. Hartley to remain
in the courtroom, in case J. W. Minnifield changed his mind. (D.A.
R-42-44, 47-57 and 59)

On January 12, 2000, the jury, having heard the evidence,
argument of counsel and charge of the Court, found J. W.
Minnifield guilty of stalking, as charged in the indictment, and he
was adjudged guilty in accordance with the verdict. (D.A. C. pp. 6

---

[4] <u>Faretta V. California</u>, 422 U.S. 806, 45 L.Ed.2d. 562, 95 S.Ct.2525, (1975).

[5] A criminal defendant has no right to "hybrid" representation. <u>McKaskle V.
Wiggins</u>, 465 U.S. 168, 183, 79 L.Ed.2d. 122, 136, 104 S.Ct. 944, (1984); <u>Hunt
V. State</u>, 659 So.2d. 933, 938, (Ala.Crim.App, 1994); aff'd <i>sub nom</i> <u>Ex parte
Hunt</u> 659 So.2d. 960, [Ala, 1995]; cert. den. <i>sub nom</i> <u>Hunt V. Alabama</u>, 516 U.S.
884, 133 L.Ed.2d. 146, 116 S.Ct. 215, (1995); <u>Lucus V. State</u>, 645 So. 2d. 333,
(Ala.Crim.App, 1994); cert. den.

4

and 37, and D.A. R- 354-355)

On February 7, 2000, the cause came on for sentencing. Mr. Hartley was present, although his status was less than clear. J. W. Minnifield, having suffered eleven prior felony convictions, was sentenced to twenty years imprisonment[6]. (D.A. C. p. 7 and D.A. R-357-369)

On February 11, 2000, J. W. Minnifield, *pro se,* filed a motion for a new trial; the same was denied on March 16, 2000. J. W. Minnifield's motion for a new trial, like the post-conviction petition *sub judice* was a disjointed collection of assertions and irrelevant argument. However, it is clear that J. W. Minnifield raised on motion for a new trial this same sort of claims he advanced on post-conviction, if not the very same claims. (D.A. C. pp. 8-9 and 111-115 and C. pp. 14-43)

Appeal followed. (D.A. R-369)

On appeal, J. W. Minnifield was represented by Mr. Joseph E. Burkhart, Esq. Mr. Burkhart raised claims relating to the Trial Court's failure to charge on a lesser offense and the sufficiency of the evidence.

---

[6] Code Of Alabama, (1975), Sections 13A-5-9(c)(1) and 13A-6-90(b), Appendix "A".

5

On September 22, 2000, this Honorable Court affirmed J.W. Minnifield's conviction and sentence with a memorandum opinion. John Willie Minnifield V. State, (CR-99-915, Sept. 22, 2000); __ case, __ So.2d. __, (Ala.Crim.App, 2000); Appendix "B".

On January 10, 2001, J. W. Minnifield filed a petition for post-conviction relief. Minnifield presented his claims in a lengthy argument, which recited disjointed and confused allegations and factual argument. (C. pp. 3-25) As best the Trial Court could tell, Minnifield asserted that:

1. The State did not introduce the original affidavit and complaint at trial.

2. The State brought witnesses before the Court outside of Minnifield's presence.

3. He was not given the opportunity to contest his prior conviction at the sentencing hearing.

4. The State fabricated his NCIC report and "falsified cases before the grand jury.

5. The prosecution practiced racial/sexual discrimination in striking the jury.

6. The prosecution witnesses were unable to state that J. W.

6

Minnifield stalked the victim.

On February 8, 2001, the State appeared by its district attorney, Ms. Eleanor I. Brooks, Esq. and her deputy, Mr. Caryl D. Bailey, Esq. and responded to the petition. The State moved to dismiss the petition on the grounds that its claims were not stated with the required specificity and were precluded. (C. pp. 27-30)

On February 20, 2001, the Honorable Sally M. Greenhaw, a Circuit Judge, found that the claims of the petition were all shown to be false by the trial record and/or precluded and none were presented with the required specificity. Therefore, Judge Greenhaw dismissed the petition (C. pp. 44-46)

This appeal follows. (C. p. 47)

### STATEMENT OF ISSUE PRESENTED

Does a trial judge err in summarily denying a post-conviction petition, which presents only conclusory allegations relating to procedurally barred claims, which have no basis in law or fact?

7

<u>STATEMENT OF THE FACTS</u>

The appellee's statement of the facts is supplemental to and in correction of Appellant J. W. Minnifield's statement.

I.

ON THE TRIAL

The State's evidence at trial proved a course of stalking of Ms. Vonciel Minnifield by J. W. Minnifield during 1998, which included at least eleven separate instances of personal confrontation, in addition to threatening letters and notes. On at least three occasions J. W. Minnifield threatened to kill Ms. Minnifield and demonstrated his intent with violent acts. (D.A. R-120-121) Except for an act in Auburn, all of these incidents took place in Montgomery County, Alabama. (D.A. R-119-120)

Ms. Vonciel Minnifield met J. W. Minnifield in 1992, and they dated for two years before they married on October 8, 1994. About two years after they married, J. W. Minnifield undertook to shove Ms. Minnifield during an argument. She told him that she did not want him "putting hands on" her. (D.A. R-87-89 and 212-213)

8

In July of 1998, J. W. Minnifield's being in a state of intoxication led Ms. Minnifield to take her children and leave her husband. What happened was this: By 1998, Ms. Minnifield had learned that when J. W. Minnifield was drunk, an argument always ensued. Not wanting to expose her children to drunken quarrels, Ms. Minnifield had developed the practice of taking her children and leaving the home, knowing that when they returned a few hours later, J. W. Minnifield would be passed out. However, on this occasion in July of 1998, Ms. Minnifield returned in heavy rain to find the locks on her home changed. She took her children to a motel, and never returned to the home she had shared with J. W. Minnifield. (D.A. R-89-90)

By October of 1998, Ms. Minnifield was living at an apartment with her children. J. W. Minnifield came to the apartment, but Ms. Minnifield refused to let him in or speak to him. Whereupon, J. W. Minnifield undertook to vandalize the lady's car. Ms. Minnifield called the police. As she was making her report, J. W. Minnifield returned and the police instructed him to leave his estranged wife alone. (D.A. R-90-92)

9

At 9:30 p.m. on October 29, 1998, J. W. Minnifield came to Ms. Minnifield's apartment demanding that she give him a vacuum cleaner he claimed was his. She told him that she would deliver it to his place of employment the next day, but she would not open her door to him. He left but returned around 11:00 p.m. Again Ms. Minnifield refused to open her door, and he left. However, at 12:30 a.m, J. W. Minnifield returned in a rage, and apparently drunk. J. W. Minnifield announced that, if Ms. Minnifield did not admit him, he was going to smash through a window. Fearing flying glass, Ms. Minnifield awakened her younger daughter, Ashley Eliza Cook, who was sleeping in the room with the only window, and told her to get up. J. W. Minnifield kicked in the front door and entered the apartment in a murderous rage. Ms. Minnifield urged her daughters to flee the apartment, but they insisted on trying to protect their mother. J. W. Minnifield produced a hatchet. Repeatedly, he stated his intent to kill Ms. Minnifield. During the violent struggle, Ms. Minnifield was thrown through a window, sustaining cuts and bruises. Ms. Minnifield's older daughter, Dana Cook, suffered a cut requiring stitches from J. W. Minnifield's hatchet. Finally, Ms. Minnifield and both of her daughters

10

managed to flee their home. The girls fled to the apartment of Ms. Rosebud Brown, while J. W. Minnifield pursued his estranged wife through the apartment complex. Ms. Brown called the police. When Montgomery Police Officer G. L. Sisson and his partner arrived, they arrested J. W. Minnifield. (D.A. R-96-104, 138-143, 147-154, 198-203, and 208-212)

After he was released from jail the next day, J. W. Minnifield told Ms. Minnifield's sister, Clemmitha Petace, what he had done the previous night, admitting chasing his estranged wife with an "ax" and hitting Ms. Petace's niece. (D.A. R-70-73)

On November 14, 1998, Ms. Minnifield took Mr. Timothy Brown to Millbrook to pick up his son. J. W. Minnifield observed Ms. Minnifield driving on the Northern Bypass in Montgomery on her way to Millbrook. He undertook to follow her onto I-65, trying to run her off the road and shouting death threats at her, when he drew alongside of her. Ms. Minnifield managed to escape only by breaking hard and spinning her car into the median. She went straight to the police and executed a warrant charging her estranged husband with reckless endangerment. (D.A. R-92-96, 157, and 190-194)

11

On three or four occasions, J. W. Minnifield was waiting outside when Ms. Minnifield and her daughters left their martial arts class. He would follow them when they drove away. (D.A. R-104-106)

One of Ms. Minnifield's jobs was as a caterer at the RSA Plaza. Every year her employer catered a tailgate party at the last Auburn home game. J. W. Minnifield had never gone with his wife to one of these events, but in 1998, he followed her there. Terrified, Ms. Minnifield asked Lester Glaxton, a security guard employed by RSA Plaza, to protect her.  When Ms. Minnifield noticed J. W. Minnifield watching her from only twenty yards away, she pointed him out to Mr. Glaxton. J. W. Minnifield was asked to leave, and, after about thirty minutes, he did so. (D.A. R-106-108, 181-186)

Twice, J. W. Minnifield stalked his estranged wife at her church, although he did not otherwise indicate any interest in religion. (D.A. R-109-110) He stalked her at her job at RSA Plaza, (D.A. R-110-112 and 224-228), and at her second job at Shoney's. (D.A. R-118-119)

He also mailed her threatening letters and left notes on her car. (D.A. R-112-118)

12

J. W. Minnifield also communicated death threats against Ms. Minnifield to her babysitter, Ms. Lawana Benson. (D.A. R-158-172)

J. W. Minnifield also threatened acquaintances of Ms. Minnifield, like auto parts store owner, Mr. Pete Rose, and spread vicious slander about her. (D.A. R-75-81)

J. W. Minnifield, *pro se*, called a number of witnesses, but it is not at all clear what he intended to prove by them. In fact, two of them, Mr. Ronnie Waters, (D.A. R-252), and Ms. Gloris Perdo, (D.A. R-255-258), gave evidence supporting the charges.

Minnifield testified in his own behalf and tried to justify his conduct. (D.A. R-261-288)

An agreed stipulation was made for Mr. Don Thomason, a defense witness, who was indisposed. (D.A. R-295-296)

In rebuttal, the State presented the testimony of former Montgomery Police Detective Cassandra Williams. Pursuant to the procedure mandated by Miranda V. Arizona, (384 U.S. 436, 16 L. Ed.2d. 694, 86 S.Ct. 1602 [1966]), Detective Williams obtained a voluntary incriminating statement from J. W. Minnifield relating to his violent attack on Ms. Minnifield and her daughters on October

13

29-30, 1998. In the statement, J. W. Minnifield also admitted

tampering with his estranged wife's car. (D.A. R-296-306)

## II.

### ON THE POST-CONVICTION PETITION

No hearing was held on the post-conviction petition.

### ARGUMENT

### IN RE: SUMMARY DISPOSITION

Rule 32.7(d), A.R.Cr.P, provides as follows:

> (d) SUMMARY DISPOSITION.  If the court determines
> that the petition is not sufficiently specific, or is
> precluded, or fails to state a claim, or that no material
> issue of fact or law exists which would entitle the
> petitioner to relief under this rule and that no purpose
> would be served by any further proceedings, the court
> may either dismiss the petition or grant leave to file an
> amended petition.  Leave to amend shall be freely
> granted.  Otherwise, the court shall direct that the
> proceedings continue and set a date for hearing.

That the petition, "... is not sufficiently specific, or is

precluded, or fails to state a claim... .", precisely describes the

petition in this case.

J. W. Minnifield claims that the State did not introduce the

original affidavit and complaint at trial. This claim, which J. W.

Minnifield variously describes as the State's "fabrication",

"altering", and "withholding" evidence, is simply irrelevant as a

14

matter of law. Affidavits for arrest warrants, arrest warrants, complaints, and even indictments are not evidence.

J. W. Minnifield claims that his right to confront and cross-examine the witnesses was violated, when the State brought witnesses before the Court outside of Minnifield's presence. For this claim, J. W. Minnifield cites pages 57-59 of the trial transcript. What appears there is the Trial Judge's advising the witnesses that they need to be back after lunch, the witnesses advising the court of certain personal inconvenience on their part, and a brief discussion of how the witnesses might be accommodated. The jury was not present, no motion was at issue, and no evidence was heard. J. W. Minnifield's claim of a violation of his right to confront the witnesses is nonsense.

J. W. Minnifield claims that he was not given the opportunity to contest his prior conviction at the sentencing hearing. This claim is proved false by the trial record. (D.A. C. pp. 38-108, 120-121, and R-357-370)

J. W. Minnifield claims that the State fabricated his NCIC report and "falsified" cases before the grand jury. The conclusory allegation relative to the NCIC report is obviously irrelevant. The

15

claim of false evidence before the grand jury is irrelevant as a matter of law. United States V. Calandra, 414 U.S. 338, 38 L.Ed.2d. 561, 94 S.Ct. 613, (1974); United States V. Costello, 350 U.S. 359, 100 L.Ed. 397, 76 S.Ct. 406, (1956); Ex parte Radford, 557 So.2d. 1288, 1291, (Ala, 1990); Aaron V. State, 271 Ala. 70, 77, 122 So.2d. 360, (1960).

J. W. Minnifield claims that the prosecution practiced racial/sexual discrimination in striking the jury. This claim is obviously precluded, since it could been have raised at trial and on appeal. Rule 32.2(a)(3), A.R.Cr.P.

J. W. Minnifield claims that the prosecution witnesses were unable to state that he stalked the victim. This claim is contradicted by the record. In addition, the sufficiency of the evidence was raised at trial and on appeal and rejected. Therefore, it is precluded. Rule 32.2(a)(2)& (4), A.R.Cr.P.

In addition, to the blatant frivolity of the claims presented in the petition, the petition, which is an incomprehensible collection of random assertions, obviously fell grossly short of the specificity required by Rule 32.6(b), A.R.Cr.P, which provides:

> (b) **Specificity**. The petition must contain a clear and specific statement of the grounds upon which relief is

16

> sought, including full disclosure of the factual basis of
> those grounds.  A bare allegation that a constitutional
> right has been violated and mere conclusions of law
> shall not be sufficient to warrant any further
> proceedings.

Andersch V. State, 716 So.2d. 242, 243, (Ala.Crim.App, 1997);

affirmed on return to remand. For this reason alone, the Trial

Judge was justified in dismissing the petition.

    The Trial Judge properly rejected the petition and its claims

summarily under Rule 32.7(d), A.R.Cr.P, above. Lockett V. State,

644 So.2d 34, (Ala, 1994).

17

CONCLUSION

In conclusion, the appellee, the State of Alabama, respectfully submits that there is no error in the record, and the appellee prays that the judgment of the Honorable Circuit Court of Montgomery County in this case be affirmed.

Respectfully submitted,

BILL PRYOR
PRY002
ATTORNEY GENERAL
BY:

JOSEPH G. L. MARSTON, III
Mar032
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR THE STATE OF
ALABAMA, APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

18

APPENDICES

APPENDIX A-STATUTES

**CODE OF ALABAMA, 1975**

**TITLE 13A**

## SECTION 13A-1-9.  LESSER INCLUDED OFFENSES.

(a) A defendant may be convicted of an offense included in an offense charged.  An offense is an included one if:

(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offenses charged; or

(2) It consists of an attempt of an attempt or solicitation to commit the offense charged of to commit a lesser included offense; or

(3) It is specifically designated by statute as a lesser degree of the offense charged or;

(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest, or a lesser kind of culpability suffices to establish its commission.

(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.

## SECTION 13A-5-6.  SENTENCES OF IMPRISONMENT FOR FELONIES.

(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:

(1) For a Class A felony, for life or not more than 99 years or less than 10 years.

20

(2) For a Class B felony, not more than 20 years or less than 2 years.

(3) For a Class C felony, not more than 10 years or less than 1 year and 1 day.

(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years.

(5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years.

(b) The actual time of release within the limitations established by subsection (a) of this section shall be determined under procedures established elsewhere by law.

## SECTION 13A-5-9. HABITUAL FELONY OFFENDERS - ADDITIONAL PENALTIES

(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished for a Class B felony:

(2) On conviction of a Class B felony, he must be punished for a Class A felony:

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

(b) In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he must be punished as follows:

21

(1) On conviction of a Class C felony, he must be punished for a Class A felony;

(2) On conviction of a Class B felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not less than 99 years.

(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;

(2) On conviction of a Class B felony, he must be punished for life in the penitentiary;

(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole.

## SECTION 13A-6-24. RECKLESS ENDANGERMENT.

(a) A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

(b) Reckless endangerment is a Class A misdemeanor.

## SECTION 13A-6-90. STALKING.

(a) A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking.

22

(b) The crime of stalking is a Class C felony.

**SECTION 13A-6-92. DEFINITIONS.**

As used in this article, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise.

(a) COURSE OF CONDUCT. A pattern of conduct composed of a series of acts over a period of time which evidences a continuity of purpose.

(b) CREDIBLE THREAT. A threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear.

(c) HARASSES. Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose.  The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress.  Constitutionally protected conduct is not included within the definition of this term.

**SECTION 13A-11-8. HARASSMENT OR HARASSING COMMUNICATIONS.**

 (a)(1) HARASSMENT.-- A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

b. Directs abusive or obscene language or makes an obscene gesture towards another person.

23

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

(b)(1) HARASSING COMMUNICATIONS. -- A person commits the crime of harassing communications if, with intent to harass or alarm another person, he or she does any of the following:
a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of written or electronic communication, in a manner likely to harass or cause alarm.

b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication.

c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.
Nothing in this section shall apply to legitimate business telephone communications.

(2) Harassing communications is a Class C misdemeanor.

24

APPENDIX B

MEMORANDUM OPINION

IN

JOHN WILLIE MINNIFIELD V. STATE, (CR-99-915, SEPT. 22,
2000); __ CASE, __ So.2d. __, (ALA.CRIM.APP, 2000)

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

(334) 242-7300

NUMBER 43455