Pg.(1)

— Exhibit N —

N-00-2569-PR

John Willie Minnifield
Plaintiff
vs.
CL. No. 99-327...

Montgomery Co. Lir Ct. Newly
State of Ala.    Discovered Evidence
Defendant
Through
Motion For Writ of
Habeas Corpus Prose

SEP 2000 Filed Melissa Rittenour Circuit Clerk

Come Now in The Above style An/or Cause
Plaintiff John willie Minnifield   in An on his
own behalf, Petitioner, This honorable Lir: Court
To Grant The body of Plaintiff John willie Minnifield
in open Court, To Present These Allegation
before The Hon: Sally Greenhaw Presiding
before in The Montgomery Alabama Cir: Court
in An/or Evedentary hearing. Plaintiff is
being held unlawfully by The D.O.C. in
And Against his will. Motion Will Reveal
Proof beyond A Reasonable doubts An
Motion This Court To Release Plaintiff
From Custody Forever. Petitioner Allege
Newly Discovery of Evidence Were Not
Knowing At Trial because State Witheld This
Information From Plaintiff in Violation
of The 14th Amendment. This Evidence Could
Not have been Knowing To Plaintiff before, or
During Trial, because The State Witheld This
Information From Plaintiff Intentionally.

pg. (2)

(1) State: Claim Plaintiff use Gobbledygook, To Create Confusion. yes State Created An

E-) Array of Confusion by Witholding evidence From Plaintiff An/or using illegal evidence An/or Wittnesses. Causing Confusion. John Willie Minnifield Was Arraigned on The Wheels of A Faulty Indictment That do Not have The Minium Standard of law. State Knew This And Then Counsil John Hartley Jr, did Conspire With State, To deprive Plaintiff of his liberty And Justice To have A Fair Trial; by Witholding Evidence That Could have Release Plaintiff From Custody.

(2) illegal evidence That Were discoverable, Were Not Revealed in Motion of Discovery.

E-2 City Cases That Were on Appeal Were use Jody Lewis: Statement Misleading Appeals Court. Dana Cook: Statement, how she Were Cut Is Misleading To Appeals Court Wittness brought before Court While plaintiff Were in holding Cell. Violent Acts, Dated For 2 years prior To Marrage Is Absurb State did Not Seek The Truth, Murderous Rage.

P. 3

## INDICTMENT ELEMENTS

The Alabama Crim Code DEFINES only Four Culbable Mental Status. Knowingly Recklessly, intentionally An/or Criminal Negligence Ala Code. 1975. 13-A-2 The Crim Code do NOT DEFINE

B-1  UNlawfully. DEFENDANT usally Waive irregularites in INDICTMENT by offering or pleading in Trial. AN Admission That INDICTMENT is Valid. ~~only~~ EXCEPTION is WHEN INDICTMENT Fails To INClude ESSENTIAL ELEMENTS OF THE OFFENSE. OF WHICH leave A DEFENDANT UNaware OF NAture An/or Cause OF Charge. Against him. Rule 16. 2-47 Rules OF Crim Procedure. Temporary.

### Harper Vs State

B-2  Failure To Allege "SCIENTER" IN INDICTMENT Charging With UNlawfully. OF Charge did NOT RENDER INDICTMENT (Void). Failure To Allege That The Wording IN The INDICTMENT, Knowingly Which is The ELEMENT AN/or NOT UNlawfully.

### WAlker Vs STATE

B-3  The STATEMENT IN walker That KNOWingly is The MAIN ELEMENTS OF The OFFENSE. OF ANy Charge AN/or INDICTMENT. PETITIONER CONTENTION, That he Can Raise The issue OF Failure OF The INDICTMENT. To Allege KNOWingly. At ANy Time beCAuse The INDICTMENT Would have Failed To State A Charge, UpoN Which A

Pg(4)

CONVICTION Could be Raised, IN Facts. Stewart
VS. State. 580-SO-2d 27 A/A (1991) The Court
of Criminal Appeal,s. Citing The Walker
B-3-B  Principle. held That The indictment IN
That Case was (Void). because it did NOT Allege
Knowingly, As An Element of The Offense.
And That The issue Could be Raised by The
Plaintiff: John W. Winifield After Trial.

### Commentary

To 13-A-2-2 definition of Culpable Mental
Status. saying The Following Regarding The
Various Terms used IN Cases decide,
before The Adoption of The Criminal Code.
Relating To and defining The Culpable
B-4  Mental Status Required. An indictment
MUST of Course inform Petitioner: of Charge,
he MUST defend Against, if it Fail To do so
Then it,s defected (Pursant) To Rule 39-6-4 A.R.A.P

### Ommission

Ommision Cannot be Corrected by Trial
Judge, without Violation of The Crump Case.
B-5  A Court is without Authority, To Add or Take-
Away, From Any of The Material Averment
IN The Indictment. Which Speaks For itself,
An is Conclusive 417 SO 2d AT 614.

C-1  Petitioner Now Move To The Case of
Cont]  Henry Mack Harper Citing Whit of Certiorri

Pg(5)

Supreme Court granted Harper. Petitioner
For WRIT OF CERTIORRI in This case, Primary
To Review This question. Was THE INDICTMENT
Which Tracked The language of the state's in
(A-1)  Alleging That (Harper). Unlawfully Committed
The crime As charged, Code of Alabama
(1975). 13-A-12-211. Fatally defected because it
did Not Allege That THE OFFENSE Were Knowingly
Committed.

Jody Lewis Statement
When State seek To Use a Person's FORMER
TESTIMONY, Against A criminal defendant. state
A-2  Must Either Produce As A Wittness, The Person
Whom Wishes To Use, or Else demonstrate That
Person is Unavaible" For Trial. Constitional
AMEND. 61 Rules of EVIDENCE. Rule. 61-804-B-1

Dana Cook Statement
Misleading Allegation To Appeals Court by
State. Mrs Minnifield older daughter Dana Cook
A-3  Suffered cut,s or/A. Requiring stitches From
23   I.W. Minnifield hatchet. See; Transcript (Page
T    216-217 line 1 thru 10 Relating how she gotten cut.
state has Several Allegation,s Misleading To Appeals
in iT brief. See Transcript of Records Which
Shows inConsistence between Transcript An/or
State Brief To Appeals Court.

Pg. (6)

### Hostile Wittness

① Use Wittness That Were Not in discovery by State of Alabama. Rosebud AN son Tim Brown Security Guard Lester Claxton. All hostile Wittness That lied while under oath. State KNEW These Peoples lied. Pg (E 2.)

### City Cases on Appeal

② Use of illegally Evidence in Contaminated Evidence That Were on Appeal From City Court. Whereas: There Were Never A Final Resolution in Those Cases AND should Never been Used. No Evidence or Stalking Are Following As Victim Allege, AT Church (2) Times AT Karate Practice (3) Times AT her Job (2) Times AT her Second Job (1) Time. See Pg (2) (E-1)

### Jody Lewis

③ See! D.A. Brief To Appeals Court Jody Lewis Not in Court. Not even Mention in Court Plaintiff: Proved Victim lied. Court Released Me. yet State Misleading Appeals Court That Plaintiff: Forced Way into his home AND Threating Victim Proved (False) Allegations. That Victim Put This Kid Up To lie To have Plaintiff locked Up.

### Dana Cook Testimony

③ How She Gotten Cut. See Page 217 Transcript State Allege She Were Cut By Plaintiff Hatchet in brief To Appeals Court Misleading Ct. Again Not being Consistency with Transcript.

Pg(7)

### Notes Left on Car

(4)(State) Knew victim were out to get Plaintiff:
Notes Left on Car, State did not check for
validy of handwriting by expert analisy.
To Prove This Was Plaintiff: No Wittness,
evidence shold have been inAdmissable.
Court had evedentary hearing before D.A.
Bailey An/or Former Attarney John Hartt.

### Illegally Bail

Released From Custody Twice No bail.
Picked up Twice on False Allegation,
Misconduct of Court. Reset Bail at $100.000.00.
Which is unlawfully. Whereas Bail were only
$40.000.00. No Merits No Wittness, To Allegatio
That Plaintiff: offered AnyOne $200.00.
To Get Apt. No: of victim. Court issued
Warrant of Arrest; For Failure To Appear.
(Absurb) False Warrant. State Failed To
Produce Wittness, That Plaintiff: Attemp
To Pay AnyOne For victim Apt. No: As
Allege by victim. Allegation Nolle Prosse

### Indictment

Is Faulty Plaintiff: Never were served
With indictment. There is No elements
No: date, An/or Time Frame To=Wit:

Pg. 8

## False Report

Sentence should never enhanced sentence due to Det. William did willifully misslead the Court by giving false information that Plaintiff had prior felonies. From St. Clair Co. Robbery, Autugain, Dallas Co., and several Burglaries in differnce Counties. This is false information. Deti Cansandra William willifully stated this were N.Lii. information which is untrue.

## P.S.I. Report

Stated same information to D.O.C. which prevent Plaintiff from custody work release an/or study release. Plaintiff still allege the cycle of lies still going on thru the false imprisonment. Everything and everybod is taking sides with Vonciel Minnifield look. An state did not investigate her past or behavior pattern being a drug addict thief, prostitute an habitual liar. See: Pete Rose statement to D.A. I sold her a part then we talked an talked an talked and became friends do that tell the Court as I allege they were lovers an he lied on stand. This Court cannot be so blind that all of the allegation and re-hearshed statement by wittness to punish Plaintiff whom really is the victim in this Case. See: Ronnie Waters statement. Pg.

Pg. 9.

## Summary Judgement

Plaintiff John W. Brimfield hope AND Pray The Court Honer This Motion For Relief AN/or Grant New Trial on grounds Stated Below.

(1) Misleading Appeals Court As Stated by Raising Issues That is INConsistence with Transcript.

(2) Using witnesses That were Not in evidence For Discovery.

(3) Using City Cases That was on Appeal To Cir. Ct. That No Final Resolution (Contemated).

(4) See: Jody Lewis IN D.A. Brief To Appeals Ct.

(5) Challenge OF Indictment No Time Frame, date.

(6) Statement OF Motion That witnes lied.

(7) Being locked up on Fraudelon Arrest Warr. T

(8) held on bond Are bail UNConstitional.

See Transcript (9) Revoked on bail Twice when There were No bail
Pg. 6
(10) See Grand Jury Indictment Fore Person David Brian Penn
Pg. 11    True Bill Fore Person Dorinda P. Hurt    See Transcript

Pg. 10

Copy of state brief to Appl ct.

Done this ___ day September 2000

Plaintiff John W. Rhimfield

Respectfully Submitted

Certificate Of Service

I Certify That i have to be placed in U.S. Mail To be served on Melisa Kattman City Court Clerk. 250 lawrence St. Montgomery Co. Courthouse Montgomery ALA 36105

Notary

Sworn to and Subscribed before me This 19th Day of September 2000. At Ventress Corr. Facility. P.O. Box 746 Clayton ALA 36016 Wittness My hand and Official seal of Office.

Notary Public Shirley Ann Smith

My Commission Expires 3/30/02 ---------

NO. CR-99-O915

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327)

BRIEF AND ARGUMENT

OF

BILL PRYOR
ATTORNEY GENERAL

AND

JOSEPH G. L. MARSTON, III
ASSISTANT ATTORNEY GENERAL

ATTORNEYS FOR APPELLEE

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300



# TABLE OF CONTENTS

PAGE(S)

TABLE OF CASES.......................................................................... ii

TABLE OF STATUTES.................................................................. iv

STATEMENT OF THE CASE........................................................... 1

STATEMENT OF ISSUES PRESENTED........................................ 5

STATEMENT OF THE FACTS......................................................... 6

ARGUMENT.................................................................................. 12

     I. IN RE: LESSER INCLUDED OFFENSES........................... 12

     II. IN RE: THE SUFFICIENCY OF THE EVIDENCE............. 14

CONCLUSION............................................................................... 15

APPENDIX..................................................................................... 16

CERTIFICATE OF SERVICE......................................................... 20

'00 SEP 25 P 3:08

FILED IN CIRCUIT COURT OF
MONTGOMERY COUNTY

## TABLE OF CASES

Page(s)

Bang V. State,
    620 So.2d. 106, (Ala.Crim.App, 1993) ............................... 13

Cook V. State,
    431 So. 2d 1322, (Ala, 1983). ......................................... 13

Culbreath V. State,
    667 So.2d. 156, (Ala.Crim.App, 1995) ............................... 14

Davis V. Alabama,
    498 U.S. 1127, 112 L.Ed.2d. 1196,
    111 S.Ct. 1091, (1991) ................................................... 13

Davis V. State,
    554 So.2d. 1094, (Ala.Crim.App, 1986) ........................... 13

Ex parte Davis,
    554 So.2d. 1111, (Ala, 1986) ......................................... 13

Ex parte Hunt,
    659 So.2d. 960, (Ala, 1995) ........................................... 4

Ex parte Ivey,
    698 So.2d. 187, (Ala, 1997) ........................................... 14

Ex parte Tomlin,
    443 So.2d. 59, (Ala, 1983) ............................................. 13

Ex parte Wright,
    494 So.2d. 745, (Ala, 1986) ........................................... 13

Faretta V. California,
    422 U.S. 806, 45 L.Ed.2d. 562,
    95 S.Ct. 2525, (1975). ................................................... 3

Garland V. Washington,
    232 U.S. 642, 58 L.Ed 772,
    34 S. Ct. 456, (1914). ..................................................... 4

Hayes V. State,
    717 So.2d. 30, (Ala.Crim.App, 1997) ............................... 14

Hunt V. Alabama,
    516 U.S. 880,133 L.Ed.2d. 146,
    116 S.Ct. 215, (1995) ...................................................... 4

Hunt V. State,
    659 So.2d. 933, (Ala.Crim.App, 1994) ............................... 4

Ivey V. State,
    698 So.2d. 179, (Ala.Crim.App, 1996) ............................. 14

Lucus V. State,
    645 So. 2d. 333, (Ala.Crim.App, 1994) .............................. 4

McKaskle V. Wiggins,
    465 U.S. 168, 183, 79 L.Ed.2d. 122,
    136, 104 S.Ct. 944, (1984) ................................................ 4

Miranda V. Arizona,
    384 U.S. 436, 16 L. Ed 2d 694,
    86 S. Ct. 1602, (1966) .................................................... 11

Singleton V. Tuscaloosa,
    557 So.2d. 565, (Ala.Crim.App, 1990). ............................. 2

Tomlin V. Alabama,
    466 U.S. 954, 80 L.Ed.2d. 545,
    104 S.Ct. 2160, (1984) .................................................. 13

Watts V. State,
    460 So.2d. 204, (Ala, 1984) .............................................. 2

<u>Wright V. Alabama</u>,
       479 U.S. 1101, 94 L. Ed.2d. 183,
       107 S.Ct. 1331, (1987) ..................................................... 13

<u>Wright V. State</u>,
       494 So.2d. 726, (Ala.Crim.App, 1985)............................. 13

## <u>TABLE OF STATUTES</u>

<u>Page(s)</u>

<u>CODE OF ALABAMA</u>, 1975

       TITLE 13A, Section 13A-1-9...................................... 13, 17

              Section 13A-5-6........................................ 17-18

              Section 13A-5-9.................................... 4, 18-19

              Section 13A-6-24.......................................... 19

              Section 13A-6-90............................. 1, 4, 12, 19

              Section 13A-6-92......................................... 20

              Section 13A-11-8............................... 12, 20-21

iv

NO. CR-99-0915

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JOHN WILLIE MINNIFIELD, ALIAS,

APPELLANT,

V.

STATE OF ALABAMA,

APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
(NO. CC 99-327)

---

BRIEF AND ARGUMENT OF APPELLEE, THE STATE OF ALABAMA

---

### STATEMENT OF THE CASE

The Grand Jury of Montgomery County, at its February,
1999, term, indicted the appellant, John Willie Minnifield, also
known by an array of aliases, including J.W. Minnifield, for
stalking[1] Ms. Vonciel Minnifield. (C. pp. 10-11)

---

[1] Code Of Alabama, (1975), Section 13A-6-90(a), appendix.

J.W. Minnifield was arraigned on the indictment or waived

arraignment[2] and pleaded not guilty.

Before trial, J.W. Minnifield attempted to proceed with

"hybrid" representation, i.e. being represented by counsel and

proceeding *pro se*, as co-counsel. Although represented by counsel,

most of the pre-trial defense motions were filed by J.W. Minnifield,

*pro se.* (C. pp. 18-19, 25-28, and 31-34) As a career criminal with

some eleven prior felony convictions, (C. p. 16-17 and 38-108),

J.W. Minnifield knew how to use gobbledygook to create confusion.

One of J.W. Minnifield's *pro se* motions was a motion to

reduce bond, filed March 16, 1999. (C. pp. 18-19) After several

hearings, the motion was granted on July 12, 1999. (C. pp. 1-4),

conditioned, *inter alia*, on J.W. Minnifield's, "... having no contact

with the victim, her family, or employer... ." (C. p. 4)

*The next day*, July 13, 1999, the district attorney filed a

motion to revoke bond, advising the Court that, after being

released on reduced bond the day before, J.W. Minnifield had gone

to the home of a relative of the victim. Although the relative told

*[handwritten annotations: "Misleading Appeal's Ct See Transcript", "Not in Transcript", "Decir as Reduced for Hobbins", "found by The Ct To Be a/w/here"]*

---

[2] See <u>Garland V. Washington</u>, 232 U.S. 642, 58 L.Ed 772, 34 S. Ct. 456, (1914); <u>Watts V. State</u>, 460 So. 2d 204, (Ala, 1984), and <u>Singleton V. Tuscaloosa</u>, 557 So. 2d 565, 566-567, (Ala.Crim.App, 1990).

2

J.W. Minnifield that he did not wish to speak to him, J.W.

Minnifield forced his way into the house and followed the man into

his bedroom, castigating him and making implied threats against

the victim. (C. pp. 29-30)    *Released by ET*

On October 21, 1999, the district attorney's motion came on

for hearing, and a capias was issued. (C. p. 5)    *Original bail was $40,000.00*

*No Proof or Cause For Re-arrest*

On November 6, 1999, the capias was executed. On

November 12, 1999, the original bond was re-instated. (C. pp. 5)

On January 10, 2000, the cause came on for trial before the

Honorable Sally M. Greenhaw, a Circuit Judge and a jury. J.W.

Minnifield was attended by his attorney, Mr. John Wiley Hartley,

Esq. The State was represented by its district attorney, Ms.

Eleanor I. Brooks, Esq. and her deputy, Mr. Daryl Bailey, Esq. (R-1-2)

Before trial, the question of "hybrid" representation was

taken up. Judge Greenhaw made it clear that, although she had

appointed Mr. Hartley to represent J.W. Minnifield, she recognized

J.W. Minnifield's right to represent himself[3]. However, she declined

---

[3] <u>Faretta V. California</u>, 422 U.S. 806, 45 L.Ed.2d. 562, 95 S.Ct.2525, (1975).

3

to allow J.W. Minnifield "hybrid" representation[4]. After an extensive colloquy, J.W. Minnifield insisted on his right to represent himself. Judge Greenhaw ordered Mr. Hartley to remain in the courtroom, in case J.W. Minnifield changed his mind. (R-42-44, 47-57 and 59)

On January 12, 2000, the jury, having heard the evidence, argument of counsel and charge of the Court, found J.W. Minnifield guilty of stalking, as charged in the indictment, and he was adjudged guilty in accordance with the verdict. (C. pp. 6 and 37, and R- 354-355)

On February 7, 2000, the cause came on for sentencing. Mr. Hartley was present, although his status was less than clear. J.W. Minnifield, having suffered eleven prior felony convictions, was sentenced to twenty years imprisonment[5]. (C. p. 7 and R-357-369)

---

[4] A criminal defendant has no right to "hybrid" representation. McKaskle V. Wiggins, 465 U.S. 168, 183, 79 L.Ed.2d. 122, 136, 104 S.Ct. 944, (1984); Hunt V. State, 659 So.2d. 933, 938, (Ala.Crim.App, 1994); aff'd sub nom Ex parte Hunt 659 So.2d. 960, [Ala, 1995]; cert. den. __ U.S. __, 133 L.Ed.2d. 146, 116 S.Ct. 215; Lucus V. State, 645 So. 2d. 333, (Ala.Crim.App, 1994); cert. den.

[5] Code Of Alabama, (1975), Sections 13A-5-9(c)(1) and 13A-6-90(b), appendix.

4

On February 11, 2000, J.W. Minnifield, *pro se*, filed a motion for a new trial; the same was denied on March 16, 2000. (C. pp. 8-9 and 111-115)

This appeal follows. (R-369)

<u>STATEMENT OF ISSUES PRESENTED</u>

1. Does a criminal defendant have the right to charges to the jury on lesser included offenses on the basis of an absurd theory, which is contrary to law?

2. Where the State proves that the defendant repeatedly followed the victim, threatened her life, tampered with her car, ran her off the road, broke into her home with a weapon, assaulted her, and tried to kill her, is the evidence sufficient to prove stalking, where the defendant and the victim were contemplating a divorce and the defendant's acts may have been intended as "communication"?

See (2) City case was on Appeal but was used As evidence Those was illegal evidence Presented

5

## STATEMENT OF THE FACTS

The appellee's statement of the facts is supplemental to and in correction of Appellant J.W. Minnifield's statement.

The State's evidence proved a course of stalking of Ms. Vonciel Minnifield by J.W. Minnifield during 1998, which included at least eleven separate instances of personal confrontation, in *UNTrue* addition to threatening letters and notes. On at least three occasions he threatened to kill her and demonstrated his intent with violent acts. (R-120-121) Except for an act in Auburn, all of these incidents took place in Montgomery County, Alabama. (R-119-120)

*UNTrue →* Ms. Vonciel Minnifield met J.W. Minnifield in 1992, and they dated for two years before they married on October 8, 1994. About two years after they married, J.W. Minnifield undertook to shove Ms. Minnifield during an argument. She told him that she did not want him "putting hands on" her. (R-87-89 and 212-213)

*This is UNTrue* In July of 1998, J.W. Minnifield's being in a state of intoxication led Ms. Minnifield to take her children and leave her husband. What happened was this: By 1998, Ms. Minnifield had learned that when J.W. Minnifield was drunk, an argument always

6

ensued. Not wanting to expose her children to drunken quarrels, *UNTRUE* Ms. Minnifield had developed the practice of taking her children *UNTRUE* and leaving the home, knowing that when they returned a few hours later, J.W. Minnifield would be passed out. However, on this occasion in July of 1998, Ms. Minnifield returned in heavy rain to *UNTRUE* *UNTRUE* find the locks on her home changed. She took her children to a *UNTRUE* motel, and never returned to the home she had shared with J.W. *UNTRUE* Minnifield. (R-89-90)

By October of 1998, Ms. Minnifield was living at an apartment with her children. J.W. Minnifield came to the apartment, but Ms. Minnifield refused to let him in or speak to *Misleading et. UNTrue* him. Whereupon, J.W. Minnifield undertook to vandalize the lady's *UNTRUE* car. Ms. Minnifield called the police. As she was making her report, J.W. Minnifield returned and the police instructed him to leave his estranged wife alone. (R-90-92)

At 9:30 p.m. on October 29, 1998, J.W. Minnifield came to Ms. Minnifield's apartment demanding that she give him a vacuum cleaner he claimed was his. She told him that she would deliver it to his place of employment the next day, but she would not open *UNTRUE* her door to him. He left but returned around 11:00 p.m. Again Ms.

7

Minnifield refused to open her door, and he left. However, at 12:30

a.m, J.W. Minnifield returned in a rage, and apparently drunk.

*UNTRUE*

J.W. Minnifield announced that, if Ms. Minnifield did not admit

him, he was going to smash through a window. Fearing flying

*UNTRUE*

glass, Ms. Minnifield awakened her younger daughter, Ashley Eliza

Cook, who was sleeping in the room with the only window, and told

her to get up. J.W. Minnifield kicked in the front door and entered

the apartment in a murderous rage. Ms. Minnifield urged her

*UNTRUE*

daughters to flee the apartment, but they insisted on trying to

protect their mother. J.W. Minnifield produced a hatchet.

Repeatedly, he stated his intent to kill Ms. Minnifield. During the

*UNTRUE*

violent struggle, Ms. Minnifield was thrown through a window,

*UNTRUE*          *UNTRUE*

sustaining cuts and bruises. Ms. Minnifield's older daughter, Dana

*UNTRUE*

Cook, suffered a cut requiring stitches from J.W. Minnifield's

*Misleading*
*See Transcript*

hatchet. Finally, Ms. Minnifield and both of her daughters

*UNTRUE*

managed to flee their home. The girls fled to the apartment of Ms.

Rosebud Brown, while J.W. Minnifield pursued his estranged wife

*UNTRUE*

through the apartment complex. Ms. Brown called the police.

When Montgomery Police Officer G.L. Sisson and his partner

8

arrived, they arrested J.W. Minnifield.  (R-96-104, 138-143, 147-

154, 198-203, and 208-212)

After he was released from jail the next day, J.W. Minnifield

told Ms. Minnifield's sister, Clemmitha Petace, what he had done

the previous night, admitting chasing his estranged wife with an

*False STaTemeNT*

"ax" and hitting Ms. Petace's niece. (R-70-73)

On November 14, 1998, Ms. Minnifield took Mr. Timothy

Brown to Millbrook to pick up his son. J.W. Minnifield  observed

Ms. Minnifield driving on the Northern Bypass in Montgomery on

her way to Millbrook. He undertook to follow her onto I-65, trying

*UNTrue*

to run her off the road and shouting death threats at her, when he

*UNTrue*          *UNTrue*

drew alongside of her. Ms. Minnifield managed to escape only by

breaking hard and spinning her car into the median. She went

*See WarraNT
city →*  straight to the police and executed a warrant charging her

*UNTrue*

estranged husband with reckless endangerment.  (R-92-96, 157,

and 190-194)

On three or four occasions, J.W. Minnifield was waiting

*UNproveN*  outside when Ms. Minnifield and her daughters left their martial

*UNTrue*

arts class. He would follow them when they drove away. (R-104-

106)

9

One of Ms. Minnifield's jobs was as a caterer at the RSA

Plaza. Every year her employer catered a tailgate party at the last

Auburn home game. J.W. Minnifield had never gone with his wife

to one of these events, but in 1998, he followed her there. Terrified,

Ms. Minnifield asked Lester Glaxton, a security guard employed by

*[handwritten: Mllisleading App]* *[handwritten: UNTrue]*

RSA Plaza, to protect her. When Ms. Minnifield noticed J.W.

Minnifield watching her from only twenty yards away, she pointed

him out to Mr. Glaxton. J.W. Minnifield was asked to leave, and

after about thirty minutes he did so. (R-106-108, 181-186)

*[handwritten: UNTrue]*

Twice, J.W. Minnifield stalked his estranged wife at her

church, although he did not otherwise indicate any interest in

*[handwritten: UNTrue]*

*[handwritten: Absurb]* religion. (R-109-110) He stalked her at her job at RSA Plaza, (R-

*[handwritten: Never]* *[handwritten: UNTrue]*

110-112 and 224-228), and at her second job at Shoney's. (R-118-

119) *[handwritten: UNTrue]*

*[handwritten: see letters]* He also sent her threatening letters through mail and left

*[handwritten: No Notes]* notes on her car. (R-112-118) *[handwritten: UNTrue]*

*[handwritten: Read her lying Statement]* J.W. Minnifield also communicated death threats against

Ms. Minnifield to her babysitter, Ms. Lawana Benson. (R-158-172)

*[handwritten: UNTrue]*

10

*[handwritten annotations: "misleading APP. CIT", "There were No Threats Read statement NOT owner"]*

He also threatened acquaintances of Ms. Minnifield, like auto parts store owner, Mr. Pete Rose, and spread vicious slander about her. (R-75-81) *[handwritten: "UNTRUE"]*

*[handwritten annotation: "misleading APP CT. see Ronnie waters Testimony"]*

J.W. Minnifield, *pro se*, called a number of witnesses, but it is not at all clear what he intended to prove by them. In fact, two of them, Mr. Ronnie Waters, (R-252), and Ms. Gloris Perdo, (R-255-258), gave evidence supporting the charges.

Minnifield testified in his own behalf and tried to justify his conduct. (R-261-288)

An agreed stipulation was made for Mr. Don Thomason, a defense witness, who was indisposed. (R-295-296)

In rebuttal, the State presented the testimony of former Montgomery Police Detective Cassandra Williams. Pursuant to the procedure mandated by <u>Miranda V. Arizona</u>, (384 U.S. 436, 16 L. Ed.2d. 694, 86 S.Ct. 1602 [1966]), Detective Williams obtained a voluntary incriminating statement from J.W. Minnifield relating to

*[handwritten annotation: "misleading APP CT."]* *[handwritten: "UNTRUE"]*

his violent attack on Ms. Minnifield and her daughters on October 29-30, 1998. *[handwritten: "UNTRUE"]* In the statement, J.W. Minnifield also admitted tampering with his estranged wife's car. (R-296-306)

11

ARGUMENT

I.

IN RE: LESSER INCLUDED OFFENSES

It was undisputed in this case that J.W. Minnifield

*No Proof* — repeatedly followed Ms. Minnifield, threatened her life, tampered

with her car, ran her off the road, broke into her home with a

*UNTRUE*

weapon, assaulted her, and tried to kill her. Yet, J.W. Minnifield

*UNTRUE*

claims that the Trial Judge erred in not charging the jury on

harassment under Section 13A-11-8(a)(1), Code Of Alabama,

(1975), appendix. Although, some of J.W. Minnifield's acts might, if

considered alone, constitute harassment, most of them went way

beyond harassment, and, because all of these acts together were

part of a course of repeated conduct intended to terrorize  Ms.

Minnifield, they together constituted stalking to the exclusion of

any other offense. Section 13A-6-90(a), Code Of Alabama, (1975),

appendix. J.W. Minnifield's "defense" was no defense at all. His

claim that he should be excused, because he and Ms. Minnifield

were contemplating a divorce and he was trying to communicate

with her, is patent nonsense, although typical of the notions self-

righteously pontificated by career criminals when they proceed *pro

se*.

Where, as here, there is no basis for a verdict of guilty of a

certain lesser included offense, an accused person has no right to

12

charges on such offense.  Section 13A-1-9(b), Code of Alabama, 1975, appendix; Bang V. State, 620 So.2d. 106, 110, (Ala.Crim.App, 1993); cert. den; Davis. V. State, 554 So.2d. 1094, 1103, (Ala.Crim.App, 1986); aff'd *sub nom* Ex parte Davis, 554 So.2d. 1111, (Ala, 1986); cert. den. 498 U.S. 1127, 112 L.Ed.2d. 1196, 111 S.Ct. 1091; Wright V. State, 494 So.2d. 726, 729ff, (Ala.Crim.App, 1985); aff'd. *sub nom* Ex parte Wright, 494 So.2d. 745, 747ff, (cases collected) (Ala, 1986); cert. den. 479 U.S. 1101, 94 L.Ed.2d. 183, 107 S.Ct. 1331; Ex parte Tomlin, 443 So.2d. 59, 61ff, (Ala, 1983); cert. den. 466 U.S. 954, 80 L.Ed.2d. 545, 104 S.Ct. 2160, and Cook V. State, 431 So.2d. 1322, (Ala, 1983).

The Trial Court correctly refused to charge on harassment.

13

## II.

## IN RE: THE SUFFICIENCY OF THE EVIDENCE

J.W. Minnifield's "defense" was that he should be excused for

*misleading APP CT* terrorizing Ms. Minnifield by malicious and cruel acts of violence,

because he and Ms. Minnifield were contemplating a divorce and
he was trying to communicate with her. Giving such a "defense"
the force of law would strip women, who found themselves in
failing marriages, of any protection of the law from whatever
cruelty their estranged husbands chose to visit on them. Such a

*where my Due Process* notion would violate every principle of the rule of law, due process,
and equal protection. Yet, this is the basis of J.W. Minnifield's
claim that the evidence was insufficient. This claim should be
rejected out of hand.

Stalking charges most commonly arise from failing or failed
marriages or similar relationships. See Hayes V. State, 717 So.2d.
30, 32, (Ala.Crim.App, 1997); cert. den; Ivey V. State, 698 So.2d.
179, 181, (Ala.Crim.App, 1996), aff'd. *sub nom* Ex parte Ivey, 698
So.2d. 187, (Ala, 1997); Culbreath V. State, 667 So.2d. 156, 157,
(Ala.Crim.App, 1995); cert. den.

The Trial Judge correctly submitted the case to the jury.

14